IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

UNITED STATES OF AMERICA,

v.  CRIMINAL NO. 2:12CR98

LAWRENCE GEROME COBB,

Defendant

## OPINION AND ORDER

This matter is presently before the Court upon a motion to suppress by Lawrence Gerome Cobb ("Defendant"). Def.'s Mot. to Suppress, ECF No. 14. The Court held a hearing concerning the instant motion on September 4, 2012. The Defendant is charged with: (1) possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1); (2) possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1); (3) possession of a firearm in furtherance of a drug-trafficking crime, 18 U.S.C. § 924(c)(1)(A); and (4) felon in possession of a firearm, 18 U.S.C. § 922(g)(1). Indictment, ECF No. 1. Defendant's motion alleges that the use of flex-cuffs to effectuate his detention during the execution of a search warrant constituted an unreasonable use of force under the Fourth Amendment. U.S. Const. amend. IV. As a consequence of the alleged violation, the Defendant argues that all evidence discovered subsequent to his hands being restrained is subject to suppression. See generally Def.'s Mem. in Supp. of Mot. to Suppress, ECF No. 15. For the reasons set forth below, the Court will **DENY** the Defendant's motion.

I.  **FACTUAL AND PROCEDURAL HISTORY**[1]

In the third week of March 2012, Sergeant K.C. Decker of the Norfolk Police Department received information that a "nip joint," a venue where liquor is sold unlawfully, was operating at the residential address of 320 West 28th Street in Norfolk, VA. Surveillance of the residence revealed heavy vehicle and pedestrian traffic each night, and persons entering and exiting the residence frequently carried cups. Subsequently, on three occasions—March 23, 24, and 27 of 2012—Special Agent Q. Coston of the Virginia Department of Alcoholic Beverage Control ("ABC") entered and purchased alcoholic beverages from persons acting in the capacity of a bartender. On March 24, Special Agent Coston also observed a sign within the residence stating "now open on Saturdays."

Based on the aforementioned observations, on March 28, 2012, Special Agent W.L. Edwards of the Virginia Department of ABC secured a search warrant for the residence at 320 West 28th Street. The warrant affidavit requests a search in relation to the offenses of: (1) the illegal sale of alcoholic beverages, in violation of Va. Code § 4.1-302; and (2) maintenance of a common nuisance, in violation of Va. Code § 4.1-317. The warrant describes things to be searched for as alcoholic beverages, or items and currency associated with the illegal sale of alcoholic beverages.

On March 28, 2012, at approximately 7:30 P.M., Special Agents of the Virginia Department of ABC and officers with the Norfolk Police Department's Special Operation's Team ("SOT") went to execute the warrant at 320 West 28th Street in Norfolk, VA. Members of

---

[1] The facts recited here are drawn from the: (1) Memorandum In Support of Defendant's Motion to Suppress, ECF No. 15; (2) Affidavit for a Search Warrant, ECF No. 15-1; (3) Government's Response to Defendant's Motion to Suppress, ECF No. 16; and (4) testimony offered before the Court on September 4, 2012 by two members of the Norfolk Police Department's Special Operation's Team ("SOT"), Michael R. Delp and Michael A. Sullivan. The facts are assumed true only for purpose of deciding the motion currently before the Court. The facts recited here are not factual findings for any purpose other than consideration of the instant motion.

the SOT, including Investigator Michael R. Delp and Detective Michael A. Sullivan, initially entered for the express purpose of securing the residence and its occupants. Once secure, the SOT members would turn the residence and its occupants over to the ABC Agents who were conducting the investigation.

The officers knocked and an unknown male opened the door. He was ordered to the ground, and SOT members proceeded to enter the premises. Upon entry, the SOT announced that it was executing a search warrant and ordered all other occupants to the ground. Cups containing alcoholic beverages littered the apartment, and the officers could immediately detect the scent of alcohol throughout the residence. Investigator Delp, the third SOT member to enter, proceeded to the first room on his left. As he did, he could see several other occupants to the rear of the residence being engaged by other SOT members. In the room, Investigator Delp found three occupants, two of which were complying with another officer's commands. The third individual, later identified as the Defendant, was standing in a corner with his hands in the front of his waistband. Defendant Cobb was wearing a bulky sweatshirt and cargo pants with approximately eight pockets.

Investigator Delp ordered the Defendant to remove his hands from his waistband and to lie on the ground. Defendant Cobb ignored that command and proceeded to take four to five steps toward a doorway leading to an adjacent room. Investigator Delp issued at least three more verbal commands to the Defendant, each time ordering him to remove his hands from his waistband and lie on the ground. Defendant Cobb finally complied, but kept his right hand concealed beneath his person. Investigator Delp again ordered the Defendant to show his hands, and Defendant Cobb finally placed both hands atop his head. Investigator Delp then proceeded

to place the Defendant in plastic flex-cuffs.

Approximately two to three minutes after the initial entry, Detective Michael A. Sullivan, the ninth SOT member to enter the residence, had circled back to the room where the Defendant was located. Detective Sullivan found the Defendant lying on the ground and in flex-cuffs. In accordance with SOT protocol, the officers proceeded to stand the Defendant up so he could be escorted to investigators outside the residence. To do so, the officers had the Defendant roll over and assisted him to a seated position. From the seated position, Investigator Delp and Detective Sullivan helped the Defendant to his feet. As he stood, however, an object fell from the front of the Defendant's pants and made a thud on the ground. The object, a double-barreled pistol, was immediately secured and cleared by Detective Sullivan.

Detective Sullivan then asked the Defendant if he had any other weapons on his person. The Defendant nodded and gestured toward another area of his body, where Detective Sullivan found a loaded, semi-automatic handgun. After securing and clearing this second handgun, Detective Sullivan completed a pat-down of the Defendant's entire person. During this pat-down the Detective felt spongy plastic bags with the texture of small pellets in both of the Defendant's cargo pockets, as well as rolled-up U.S. currency in one of the ankle pockets. The Detective did not look into the pockets at this time. Rather, the Defendant was turned over to ABC investigators, to whom Detective Sullivan communicated his suspicion that the Defendant possessed illegal contraband.

Special Agent Edwards of the Virginia ABC subsequently determined that the Defendant was a convicted felon, and proceeded to execute a search incident to arrest based on the Defendant's possession of the two aforementioned firearms. It was during this final search that

law enforcement discovered cocaine, cocaine-base, marijuana, and $8,102.25 in cash on the Defendant's person.

## II. LEGAL STANDARD

"[O]fficers executing a search warrant for contraband have the authority 'to detain the occupants of the premises while a proper search is conducted.'" Muehler v. Mena, 544 U.S. 93, 98 (2005) (quoting Michigan v. Summers, 452 U.S. 692, 705 (1981)). Inherent in that authorization "is the authority to use reasonable force to effectuate the detention." Id. at 98-99. Such force will be deemed reasonable under the Fourth Amendment where the government's interest in the manner of detention outweighs the intrusion imposed. Id. at 99 (citing Graham v. Connor, 490 U.S. 386, 396-97 (1989)).

The reasonableness determination is not "capable of precise definition or mechanical application." Graham, 490 U.S at 396 (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)). Rather, it "requires careful attention to the facts and circumstances of each particular case." It is "judged from the perspective of a reasonable officer on the scene," and should "embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 396-97 (internal citations omitted). The determination is made without regard to law enforcement's "underlying intent or motivations." Kopec v. Tate, 361 F.3d 772 (4th Cir. 2004) (citing Graham, 490 U.S. at 397 (internal quotation omitted)).

## III. ANALYSIS

### A. Defendant's Argument That Effectuating His Detention Through the Use of Flex-Cuffs Constituted an Unreasonable Use of Force.

Defendant concedes that law enforcement had the authority to detain him pursuant to the

search warrant. Def.'s Mem. in Supp. of Mot. to Suppress 4, ECF No. 15. Defendant also does not contest the duration of his detention. Rather, Defendant Cobb argues that the use of flex-cuffs to effectuate his detention constituted an unreasonable use of force under the Fourth Amendment. See generally Def.'s Mem. in Supp. of Mot. to Suppress, ECF No. 15.

To advance his claim that the use of flex-cuffs was objectively unreasonable, the Defendant seeks to distinguish the Court's opinion in Muehler v. Mena, 544 U.S. at 93. In Muehler, a Special Weapons and Tactics ("SWAT") team executed a search warrant for deadly weapons and evidence of gang membership at a residential property. Id. at 95-96. Law enforcement suspected that at least one occupant was armed and dangerous. Id. at 95. In securing the property, the SWAT team found and detained four occupants. Each occupant was detained, under police guard and in handcuffs, for the duration of the search. Id. at 96.

In a subsequent civil rights action, one of the detainees argued that the manner of detention was unreasonable under the Fourth Amendment. The Supreme Court disagreed, explaining that law enforcement's authority to detain and use handcuffs is at a maximum when confronted with "inherently dangerous situations." Id. at 100. In such situations, "the use of handcuffs minimizes the risk of harm to both officers and occupants." Id. The Court further emphasized that, though the safety risk inherent in executing a search warrant for weapons independently justified the manner of detention, "the need to detain multiple occupants made the use of handcuffs all the more reasonable." Muehler, 544 U.S. at 100.

According to the Defendant, Muehler is distinguishable from the instant case because "police were not seeking to recover weapons or wanted individuals," nor did the Norfolk SOT have reason to believe an occupant "was armed, dangerous or presented any threat to officers."

Def.'s Mem. in Supp. of Mot. to Suppress 3, ECF No. 15.

### B. The Reasonableness of a Use of Force During the Execution of a Search Warrant Is Not Contingent on the Property, Objects, or Persons for Which the Warrant Is Issued.

The Defendant reads Muehler too narrowly. Execution of a search warrant for weapons may independently justify the immediate restraint of a resident's occupants, but the majority in Muehler never suggests, as the Defendant contends, that law enforcement's authority to use force is limited by the property, objects, or persons for which the warrant is issued. The reasonableness of a use of force under Graham is adjudged based on the totality of circumstances confronting law enforcement, and restraining an occupant's hands may be justified notwithstanding a limited expectation of confronting an inherently dangerous situation prior to execution of a warrant.

For instance, in Unus v. Kane, 565 F.3d 103 (4th Cir. 2009), cert. denied 130 S.Ct. 1137 (2010), federal agents and local police executed a warrant at a residential premises. The warrant authorized the search and seizure of documents and other evidence of money laundering, tax evasion, and material support for terrorism. Id. at 110. The residence was occupied by a four-person family, all of whom were United States citizens without criminal records. Id. at 108. In executing the warrant, one of the agents knocked on the front door and demanded entry. Id. at 110. The agents observed two females, the mother and daughter, both of whom retreated to the rear of the home. Id. at 110. The agents breached the front door using a battering ram, entered the home, and physically restrained both occupants with handcuffs. They were kept in handcuffs for the majority of the search, approximately three-and-a-half hours. Id.

In Unus, 565 F.3d at 119-20, the Fourth Circuit addressed whether the agents' use of handcuffs to effectuate those detentions was unreasonable in light of Muehler. "Although they

7

were searching for financial documents only—and not for either weapons or persons," the Circuit found that "a reasonable officer would have had legitimate safety concerns" under the circumstances confronting them. Unus, 565 F.3d at 120. Specifically, the Unus opinion weighted in the government's favor: (1) the warrant's relation to an investigation of international terrorism; (2) the pre-entry uncertainty of what, if any, resistance law enforcement might confront; (3) the hectic conditions that arose during entry; and (4) the detainee's mannerisms, which raised concerns that they might "take some action that would make an unstable situation." Id. Thus, though the warrant evidenced only a limited expectation of confronting an inherently dangerous situation, restraint of the occupants' hands was justified based on pre-entry uncertainty and conditions that arose post-entry.

C. The Interests of Officer and Occupant Safety Outweigh the Marginal Intrusion Imposed Through the Application of Flex-Cuffs to the Defendant.

The Court finds that, in light of the circumstances confronting law enforcement charged with securing the premises at 320 West 28th Street, the officers acted reasonably in effectuating the Defendant's detention through the use of flex-cuffs.[2] As in Muehler, 544 U.S. at 99-100, the government's interests in officer and occupant safety outweigh the marginal intrusion imposed.

First, the warrant authorized the search of a residence located in an area well known to members of the Norfolk Police Department. Investigator Delp, a sixteen-year veteran of the

---

[2] At the September 4 hearing concerning the motion before the Court, Investigator Delp of the Norfolk SOT explained that plastic flex-cuffs are typically used where law enforcement anticipates the need to restrain a large number of individuals. Flex-cuffs are preferred because they are less expensive and the weight of steel handcuffs would be unnecessarily restrictive.

The Defendant did not raise the Norfolk SOT's use of flex-cuffs, as opposed to steel handcuffs, in arguing that his detention was objectively unreasonable. Moreover, the Court finds that which of these two forms of restraint was used is immaterial under the circumstances. See Hines v. City of Albany, No. 1:06-CV-01517 (NOPM), 2011 WL 2620381, at *6 n.8 (N.D.N.Y. July 1, 2011) (unpublished opinion) (finding that the use of flex-cuffs, as opposed to steel handcuffs, is immaterial to an unreasonable use of force claim absent evidence that one form was too restrictive, or that one type of restraint was to be preferred due to some health-related concern).

Department, acknowledged that the residence is located in an area of heavy-crime and narcotics trafficking where, in recent memory, a police officer was shot and killed. Detective Sullivan, a twelve-year veteran of the Department and five-year veteran of the SOT, testified that flex-cuffs are commonly applied during the execution of search warrants in such areas due to the heightened risk to officer and occupant safety.

In considering the neighborhood's reputation, the Court finds instructive the Supreme Court's decision in Illinois v. Wardlow, 528 U.S. 119 (2000). In Wardlow, two members of the Chicago police department were part of a four-vehicle caravan converging on an area known for heavy-narcotics trafficking. Id. at 121. The defendant in Wardlow was standing next to a building holding an opaque bag and, upon seeing the officers, fled. Id. at 121-22. The officers gave chase, stopped the defendant, and performed a protective pat-down. In the bag the officers found a loaded handgun. Id. at 122. The defendant sought to suppress evidence of the handgun, alleging that law enforcement lacked reasonable suspicion under the Fourth Amendment to initiate the stop. Though not dispositive, in rejecting that argument the Supreme Court treated "the fact that the stop occurred in a 'high crime area' among the relevant contextual considerations in a Terry analysis." Id. at 124 (citing Adams v. Williams, 407 U.S. 143, 144, 147-48 (1972)). "[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." Id.

The seminal question under the Fourth Amendment is whether law enforcement acted reasonably, and a location's characteristics are as relevant to answering that question with respect to a use of force under Graham as they are to testing for reasonable suspicion under

Terry. Though not determinative, the heightened risk of executing a warrant in an area known for heavy-narcotics trafficking and violent crime directed at law enforcement weighs in favor of the SOT's application of flex-cuffs to the Defendant.

Second, though the warrant did not suggest the presence of any armed or dangerous persons, it did reveal that the residence in this residential area was subject to heavy vehicle and pedestrian traffic. Officers could not have ascertained the backgrounds of each individual coming-and-going from the residence. Thus, viewed objectively, the officers could not know whether they would confront resistance upon entry. To mitigate that uncertainty, the SOT might reasonably have concluded that the immediate restraint of all occupants was necessary to ensure officer and occupant safety.

Third, upon entry, the Norfolk SOT was confronted with approximately twenty occupants of unknown backgrounds, any of whom they had reason to believe might be intoxicated. The Supreme Court in Muehler emphasized that "the need to detain multiple occupants ma[kes] the use of handcuffs all the more reasonable," 544 U.S. at 100, and this is particularly true where there is reason to suspect that the majority of those individuals are under the influence of alcohol.

Finally, officers had particularized justification for effectuating the Defendant's detention through the use of flex-cuffs. Upon entering the residence, Investigator Delp was confronted with an individual—later identified as the Defendant—with his hands concealed in his waistline beneath baggy clothing. The Defendant ignored Investigator Delp's initial order to expose his hands and lie on the floor. Instead, Defendant Cobb began to exit the room. Investigator Delp issued at least three more verbal commands before the Defendant lied face down on the floor but, even then, he kept his right hand concealed beneath his person. Under the circumstances,

Investigator Delp had ample basis to suspect that the Defendant possessed a concealed weapon. Confronted with a non-compliant individual attempting to conceal his hands during the execution of a search warrant, it is entirely reasonable for an officer to effectuate that individual's detention through the use of hand restraints. Cf. Gutierrez v. Hackett, 131 F. App'x 621, 624-25 (10th Cir. 2005) (unpublished opinion) (upholding verdict that use of police dog to effect arrest constituted reasonable force based, in part, on suspect keeping "his hands hidden in such a manner as to conceal a weapon").

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Defendant's motion to suppress evidence discovered during execution of the search warrant at 320 West 28th Street. The Clerk is **DIRECTED** to deliver a copy of this Order to all Counsel of Record in this case.

**IT IS SO ORDERED.**

ENTER NUNC PRO TUNC Sept 4, 2012

/s/
Robert G. Doumar
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

Norfolk, VA
September 17, 2012